IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MICHAEL J. ZARATE, | § | |
| Institutional ID No. 2153751, | § | |
| SID No. 08596418, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:19-CV-00146-BU |
| | § | |
| BROWN COUNTY SHERIFF'S | § | |
| DEPARTMENT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE

*Pro se* plaintiff Michael J. Zarate is a prisoner with the Texas Department of Criminal Justice. He filed this action on June 24, 2019, complaining of civil rights violations that allegedly occurred during his time as a pre-trial detainee at the Brown County Jail between 2015 and 2019. Dkt. No. 1. Zarate brings claims against fifteen (15) defendants.

The Court granted Zarate leave to proceed *in forma pauperis*, which subjects his Complaint to preliminary screening under 28 U.S.C. § 1915. Dkt. No. 6. And because Zarate, an inmate, sues a government entity, officer, or employee, his Complaint is also subject to screening under 28 U.S.C. § 1915A. This case was transferred to the undersigned to conduct the screening required by those statutes. Dkt. No. 13.

Zarate has not consented to a magistrate judge exercising the full jurisdiction of this Court, thus the undersigned submits these Findings, Conclusions, and Recommendations for the disposition of Zarate's claims. *See id*.

## I. PRELIMINARY SCREENING STANDARDS

A court must dismiss a complaint filed by a prisoner proceeding *in forma pauperis* against a government entity, officer, or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying same screening measures suits by a prisoner against government entities, officers, or employees regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's well-pleaded allegations, his responses to a questionnaire, and the authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma*

*pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold *pro se* plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). Plaintiffs must plead enough facts to demonstrate that their claims have "substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). This means that the facts pleaded must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. DISCUSSION AND ANALYSIS

Zarate's claims are numerous, diverse, and often patently implausible. Through his Amended Complaint and responses to the Magistrate Judge's Questionnaire, Zarate purports to bring claims against fifteen (15) defendants, most of which appear time barred

as they occurred more than two years prior to Zarate filing this lawsuit. Zarate's defendants include the Brown County Sheriff's Office ("BCSO") and its Sheriff, Captain FNU Caffy, Sergeant FNU Allison, Officer FNU Saxton, Jane Doe Officers 1-3, John Doe Officers 1-3, Dr. FNU Dunn, John Doe dentist (a/k/a "Dental Doc"), Zarate's former attorney Judson K. Woodley, and Private Investigator FNU Swarenger. Dkt. No. 22 at 2.

For those claims that appear to be barred by the two-year statute of limitations, the undersigned does not attempt to decipher whether Zarate brings those claims against the defendants in their individual or official capacities as the claims would be barred regardless. And Zarate's claims that appear to be barred are claims that he was (1) assaulted by inmate Wash in December 2014, (2) denied medical treatment in January 2015 following the assault by Wash, (3) poisoned by a letter sent by Saxton in February-March 2015, (4) subjected to food poisoning in March 2015, (5) threatened by Allison in March 2015 through Allison's encouraging inmates to assault him, (6) physically assaulted by Allison in April 2015, (7) injured in July 2015 by a John Doe officer who slammed a vehicle door on his leg, (8) sexually assaulted by a guard in September-October 2015, (9) assaulted by an inmate in September 2015 while a guard stood by and watched, (10) physically assaulted again by Allison in December 2015, (11) drugged into a delusional state in October 2015 by his attorney Woodley and a court-appointed investigator named Swarenger, both of whom conspired with Allison to get Zarate to falsely admit to a state crime by forcing Zarate to ingest an unknown chemical substance or drug, (12) assaulted by Allison in January-February 2017 by Allison's spraying his bed linens with poison oak, staph infection, or other noxious substance, (13) subjected to food poisoning (claims

4

accruing prior to June 24, 2017, two years before filing this suit), (14) denied medical and dental treatment (claims accruing prior to June 24, 2017), and (15) harmed by the Sheriff and the BCSO through their ignoring or failing to protect Zarate from the above alleged harms. Dkt. No. 25 at 32.

A.  Zarate's time-barred claims

Section 1983 does not include a statute of limitations. Instead, the Supreme Court determined that the general statute of limitations of the forum state for personal injuries governs Section 1983 claims. *Owens v. Okure*, 488 U.S. 235, 239 (1989). In Texas, a plaintiff has two years from the time his claims accrue to file a personal injury claim, including a claim filed under Section 1983. *Balle v. Nueces Cty., Texas,* 952 F.3d 552, 556 (5th Cir. 2017) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). And because federal courts borrow the Texas statute of limitations in Section 1983 cases, they also borrow Texas's equitable tolling principles. *See Board of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 485 (1980).

But determining when a claim *accrues* is a distinct concept from determining, once it accrues, whether the limitation period has been *tolled*. *Shelby v. City of El Paso, Tex*., 577 F. App'x 327, 331 (5th Cir. 2014). And accrual is a question of federal law, not state law. *Nottingham v. Richardson*, 499 F.App'x 368, 375 (5th Cir. 2012); *see also Wallace v. Kato*, 549 U.S. 384 (2007) (holding that while the forum state's statutes of limitation are used in a Section 1983 claim, federal law governs when the cause of action accrues). And "[u]nder federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he

has been injured.'" *Russell v. Bd. of Trustees,* 968 F.2d 489, 493 (5th Cir.1992) (quoting *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir. 1987).

Awareness for accrual purposes consists of two elements: (1) awareness of the injury, and (2) awareness of the connection between the injury and the defendant's actions. *See Stewart v. Par. of Jefferson,* 951 F.2d 681, 684 (5th Cir. 1992). It is not required that a plaintiff realize that a *legal* cause of action exists, provided he knows of the *facts* that would ultimately support a claim. *See Harrison v. United States,* 708 F.2d 1023, 1027 (5th Cir. 1983) ("The plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury."); *see also Rotella v. Pederson*, 144 F.3d 892, 894 (5th Cir. 1998) (holding that ignorance of the law and illiteracy are not grounds for equitable tolling); *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991).

Moreover, a plaintiff need not have actual knowledge of the facts giving rise to a claim if the circumstances would lead a reasonable person to investigate further. *See Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) ("Under federal law, the limitations period commences when 'the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' thereof." (quoting *Vigman v. Cmty. Nat'l Bank & Trust Co*., 635 F.2d 455, 459 (5th Cir. 1981)).

Because many of Zarate's claims appear time-barred on their face, the Court considers whether there is a plausible basis on which any of those claims can be saved through equitable tolling or deferred accrual of the claims. Through the questionnaire, the Court gave Zarate an opportunity to explain why his apparently time barred claims might be saved through equitable tolling or deferred accrual of those claims. Dkt. No. 24 at 4-5. Zarate responds that some of the injuries allegedly sustained by him because of defendants' conduct "have a permanent effect on my mental capacity at the time to be able to determine between long term injuries and just injuries without the proper medical evaluation." Dkt. No. 25 at 29. He also refers to his "mental competence" but only in relation to his ability for "understanding that I was assaulted and that my civil rights were being violated. . . ." *Id*. Otherwise, Zarate attributes the failure to timely file suit on his claims to his "misunderstanding of the knowledge of having the rights" and "the knowledge of having rights and ability to litigate sometimes takes time." *Id*.

Zarate does not allege that he was unaware of the facts involved with each time barred claim. And each of the time barred claims appears to be of a nature that would result in Zarate's immediate awareness of both the alleged injury and the connection between the injury and the defendant's alleged actions.

As explained above, for this Section 1983 case, the Court borrows from Texas both its statute of limitations and its equitable tolling principles. And equitable tolling is sparingly applied in Texas courts. *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (per curiam). To be entitled to equitable tolling under Texas law, a plaintiff must demonstrate that he "actively pursued his judicial remedies but filed a defective pleading

during the statutory period" or "was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005).

Zarate does not claim that he was induced or tricked into missing the filing deadlines for his time barred claims. Nor does it appear that he diligently pursued his legal remedies after becoming aware of those claims. For these reasons, the undersigned finds that Texas's equitable tolling principles are not available to Zarate.

Texas law also provides for the suspension of a statute of limitations for those under a legal disability, including persons who are "of unsound mind." Tex. Civ. Prac. & Rem. Code Ann. § 16.001. But Zarate does not claim to have been of unsound mind at any time during the limitations period. His reference to mental capacity relates only to his ability to predict whether the injuries he claims to have suffered and that resulted from the defendants' alleged actions—both of which he was apparently aware—would be short-term or long-term, and his ability to understand that he had a legal cause of action. As explained above, these are neither bases for equitable tolling nor the deferred accrual of the claims.

To the extent Zarate's factual allegations can be construed to invoke the discovery rule, the result is the same. The relief provided by the discovery rule is in the nature of deferring the *accrual* of a cause of action, not the *tolling* of the statute of limitations. *Shelby v. City of El Paso, Tex.*, 577 F. App'x 327, 331 (5th Cir. 2014) (per curiam) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). And as explained above, the accrual of Section 1983 claim is determined by reference to federal

law, not state law. *Id.*; *see also Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008); *Nottingham*, 499 F. App'x at 375. And under the federal discovery rule, the limitations period begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Russell*, 968 F.2d at 493.

As explained above, Zarate does not claim that he was unaware of the facts giving rise to each time barred claim or the connection to the defendants' alleged actions. He has provided no facts to plausibly support that the time barred claims—with the possible exception of his food poisoning claims discussed below—are the type of claims that would require more than two years to understand constituted violations of his rights.

For these reasons, the undersigned RECOMMENDS that Zarate's time barred claims above be dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

B. <u>Non-time-barred claims</u>

Zarate's claims that potentially accrued *during* the two-year statute of limitations are his claims of: (1) food poisoning that accrued after June 24, 2017, two years before filing suit, (2) deliberate indifference to serious medical needs in connection with his medical and dental needs between June 24, 2017, and his release from Brown County on October 1, 2017, and (3) failure of the Sheriff and the BCSO to protect him from any non-time barred food poisoning and deliberate indifference claims. The Court takes each in turn.

1.  Food poisoning claims accruing on or after June 24, 2017

In his Amended Complaint, Zarate claims that an "Officer Doe" was responsible for giving him food poisoning "multiple times" between March 8, 2015 and October 1, 2017. Dkt. No. 22 at 6, 8. Thus, because he has alleged food poisoning claims within the statute of limitations—between June 24, 2017, and October 1, 2017—the undersigned screens those claims.

Zarate claims that his ex-girlfriend knew some of "the jailers" at the BCSO and she may have conspired with the jailers to poison Zarate. Zarate's "other theory" is that his murder victim's family and friends were somehow involved in the alleged assaults against him in the Brown County jail.[1] *Id*. at 12.

The Court ordered Zarate to respond under oath to a questionnaire to further develop his claims. Specific to his food poisoning claims, the Court ordered Zarate to "[p]rovide all facts to support your allegation of food poisoning. Be as specific as possible." Dkt. No. 24 at 15. Zarate responds by stating that: "I ate the Thursday hamburger. The French fries had a clear substance to it." Dkt. No. 25 at 34. And when asked whether he knew the food was bad at the time he ate it, he states that "[n]one of the food smelled bad, but time to time I'd get some gooky substance on the food that had no taste." *Id*. at 39-40 (edited for clarity and spelling). And there were times that "the milk tasted like blood." *Id*. at 40.

When asked to describe in detail how the food poisoning harmed him, Zarate states that "[t]he food started stomach pains that did not go away for at least 2-3 months. The

---

[1] Zarate is serving a life sentence for his 2017 convictions for murder and tampering with physical evidence. *See* TEXAS DEPARTMENT OF CRIMINAL JUSTICE INMATE INFORMATION DETAILS, https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=08594618 (last visited March 16, 2022).

nausea feeling stay with me even longer. Loss of muscular tone and weakness and fatigue. Loss of concentration. Faster days." *Id*. at 34 (edited for clarity and spelling). "It gave me stomach noises, very bad pains like I want to vomit like a horrible stomach bug. The pains in my stomach stuck with me for quite a while." Dkt. No. 25 at 34 (edited for clarity and spelling).

When asked by the Court to explain how he knew that he received food poisoning, Zarate responds that he "felt really sick and had all the signs. It got me sick physically and mentally." *Id*. And when asked how he knew that Officer Doe gave him food poisoning, Zarate merely repeats his symptoms of stabbing stomach pains, vomiting, weakness, and pain in his kidneys, liver, and chest. *Id*.

Zarate was also asked to provide the specific dates that he was subjected to food poisoning, and he states March 8, 2015. *Id*. at 30, 34. But elsewhere he claims that the food poisoning occurred between March 8, 2015, and October 1, 2017. *Id*. at 39. And in response to another question about the dates he claims to have received food poisoning, Zarate lists February through September of 2017, and then lists the physical symptoms he claims to have experienced on those dates. Again, any claim accruing between June 24, 2017, and October 1, 2017, would not be barred by the two-year statute of limitations.

Finally, when asked to identify the Officer Doe who he claims was responsible for the food poisoning, Zarate responds that he thinks Saxton gave him food poisoning because he oversaw food service in March 2015. *Id*. at 30. Elsewhere, Zarate states that he thinks Allison might have been working in food service at the time. *Id*. at 39.

The constitutional rights of a pretrial detainee stem from the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Since pretrial detainees have not yet been adjudicated guilty, their conditions of confinement cannot be used as punishment. *Bell v. Wolfish*¸ 441 U.S. 520, 535 (1979). Under the application of the Fourteenth Amendment, pretrial detainees have at least the same amount of protection under the Eighth Amendment as convicted prisoners. *Hare*, 74 F.3d at 639.

Prisons and jails have a duty to meet inmates' basic needs by furnishing adequate food, water, shelter, clothing, medical care, and a safe environment. *Id.* Such basic needs constitute the "humane conditions of confinement" required under the Eighth Amendment. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). While prisons are not mandated to be comfortable, the Eighth Amendment does not "permit inhuman ones." *Famer v. Brennan*, 511 U.S. 825, 832 (1994) (internal cites omitted). Inmates must be given "well balanced meals consisting of sufficient nutritional value to preserve life." *Arredondo v. Jett*, 6:19-CV-470, 2019 WL 7978888, at *2 (E.D. Tex. Dec. 23, 2019), *R and R. adopted*, No. 6:19-cv-470, 2020 WL 805236 (E.D. Tex. Feb. 17, 2020).

An inmate seeking to establish an Eighth Amendment violation regarding medical care or food must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (emphasis in original)). "A serious medical need is one for which treatment has

been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Galdwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

To be successful on a claim of deliberate indifference, an inmate must satisfy both an objective and subjective component. *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013). An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *See Gobert*, 463 F.3d at 345. Additionally, the inmate must show that the prison official demonstrated deliberate indifference to that risk through his or her actions or inactions. *Id*. at 346. Here again, a prison official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Texas Dep't. of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

Applying these principles in the context of food poising, it is well settled that "a single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, does not constitute a violation of the constitutional rights of the affected prisoners." *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988). But "[i]f prisoners regularly and frequently suffer from food poisoning with truly serious medical complications as a result of particular, known unsanitary practices which are customarily followed by the prison food service organization, and the authorities without arguable justification refuse to attempt remedial measures, the requisite deliberate indifference might well be manifested or inferred." *Id.*

Zarate's factual allegations of food poisoning claim are conclusory, speculative, and, lacking in factual support. *See Twombly*, 550 U.S. at 545. As shown above, the sum of Zarate's factual allegations is that the French fries he was served on March 8, 2015 "had

a clear substance" on them, that he would occasionally receive food with a "gooky substance" on it, and that his milk once "tasted like blood." Dkt. No. 25 at 34, 40. Otherwise, Zarate admits that none of his food smelled or tasted bad. *Id*. at 40.

Zarate's factual allegation regarding the food served to him on March 8, 2015, is the only specific instance of food poisoning Zarate asserts, although he claims that this single incident continued to make him ill through the remaining thirty-one (31) months of his incarceration at the Brown County Jail. Under the federal discovery rule, the limitations period for this incident begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Russell,* 968 F.2d at 493. In other words, to bring Zarate's food poisoning claim within the two year limitations period would require the Court to find that Zarate plausibly alleged that he was neither aware of the alleged food poisoning on March 8, 2015, nor had sufficient information to prompt a reasonable person to investigate further for a period of almost 28 months—from March 8, 2015, through June 24, 2017—during which time Zarate admits that he "felt really sick and had all the signs" of food poisoning. Dkt. No. 25 at 34. To reach such a conclusion would require this Court to ignore its judicial experience and common sense, which it is not required to do. *See Iqbal*, 556 U.S. at 679.

Moreover, the authenticated records of the BCSO do not support Zarate's claims of food poisoning during the limitations period. The BCSO records consist of 254 pages, which includes Zarate's grievances, medical records, disciplinary records, and other records compiled while he was incarcerated at the Brown County jail. Those records reflect that Zarate complained of a residue on his food in October 2015. He also complained that

14

his attorney brought him food from home in January-February 2016 to "drug" him. Otherwise, the only gastrointestinal illness Zarate complained of involved stomach pains and flu-like symptoms in February 2014 and dizziness in March 2017 that caused vomiting. Each of these complaints appears to have been timely addressed by the BCSO and, even if not, would be time barred as explained above. No non-time barred complaints by Zarate of food quality or gastrointestinal illness are reflected in the authenticated records.

Where a prisoner's claims are directly contradicted by the prison's authenticated records, the Court may dismiss those claims as frivolous. *See Banuelos*, 41 F.3d at 234 (holding that courts may dismiss a prisoner's *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)). Here, Zarate's conclusory allegations of food poisoning, and that the food poisoning necessitated medical treatment, are directly contradicted by the record, and thus will not plausibly support a claim of deliberate indifference. *Id.*; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curium). Even if the Court accepts as true that Zarate was ill at some point within the applicable limitations period, his speculative allegations are insufficient to raise food poisoning as the cause above a mere possibility.

Finally, Zarate does not claim that any other prisoner contracted food poisoning while he was incarcerated at the Brown County jail, which one would reasonably expect if there was deliberate indifference on the part of anyone at the BCSO to inmates regularly suffering from food poisoning that caused serious medical complications. *See George,* 837 F.2d at 707. And for the Court to accept that Zarate was the only inmate subjected to food

poisoning during his incarceration in Brown County would require the Court to find as plausible one or more of Zarate's conspiracy theories, which the Court cannot do.

For these reasons, the undersigned RECOMMENDS that Zarate's claims of food poisoning on or after June 24, 2017, be DISMISSED with prejudice as frivolous and for failure to state a claim under 28 U.S.C. §§ 1915 (e)(2) and 1915A(b)(1).

2.  Deliberate indifference to serious medical needs by Dr. Dunn and John Doe Dentist ("Dental Doc")

Zarate claims in his Amended Complaint that Dr. Dunn "refused to provide proper medical assistance in multiple situations" and "wrongfully medicated" him. Dkt. No. 22 at 7. He also claims that a "Dental Doc refused medical treatment for serious needs and refused filling to Plaintiff." *Id*. at 8. Zarate claims that he was refused the needed dental treatment unless he paid for it himself. *Id*. The Court assumes for purposes of preliminary screening that Dr. Dunn and John Doe Dentist were physicians providing medical and dental services to Brown County inmates under a contract with Brown County and, thus are deemed to be state actors under Section 1983. *West v. Atkins*, 487 U.S. 42, 54-57 (1988); *Kikta v. Maruasti*, 12 F.3d 1098 (5th Cir. 1993).

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials. . . ." *Thomas v. Mills*, 614 F. App'x 777, 778 (5th Cir. 2015) (per curiam) (quoting *Thompson v. Upshur Cnty.,* 245 F.3d 447, 457 (5th Cir. 2001). Indeed "there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v.*

*Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). "[A]nd the deliberate indifference standard articulated by the Supreme Court in *Farmer v. Brennan* . . . applies to pretrial detainees and convicted prisoners alike." *Thomas*, 614 F. App'x at 778 (citing *Hare ,* 74 F.3d at 643).

To state a claim for deliberate indifference to serious medical needs in this context, Zarate must bring forward factual allegations that Dr. Dunn, John Doe Dentist, or some other BCSO official acted with such deliberate indifference as to amount to the "unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Domino*, 239 F.3d at 756 (quoting *Farmer*, 511 U.S. at 837) (alterations and internal quotation marks omitted). A jail official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Id.*

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346 . Similarly, an inmate's disagreement with the treatment provided does not give rise to a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation." *Evans v. Brouwer*, No. 9:13-CV-302, 2017 WL 4216067, at *1 (E.D. Tex. Sept. 22, 2017)

(internal citations omitted). An inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

### a. *Dr. Dunn*

Zarate claims that Dr. Dunn "refused to provide proper medical assistance in multiple situations" and "wrongfully medicated" him. Dkt. No. 22 at 7. In seeking to develop these sparse and conclusory claims through a questionnaire, the Court asked Zarate to provide the dates when Dr. Dunn refused to provide him with medical treatment. Dkt. No. 24 at 10. In response, Zarate provide the dates of December 2014 through January 2015. Dkt. No. 25 at 32. Zarate then generally claims that Dr. Dunn "refused all medical treatment, testing, and examination through time of stay Oct. 2017 at the Brown County Jail." *Id*. Zarate also lists several of his time-barred incidents for which he claims he was refused treatment. *Id*.

Initially, the Court notes that Zarate's claims against Dr. Dunn are vague, conclusory, and so devoid of specifics that the Court cannot determine that Dr. Dunn was plausibly both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and actually "[drew] the inference." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Farmer*, 511 U.S. at 837).

Otherwise, the only non-time barred incident identified by Zarate for which he claims to have been refused medical treatment is his claim for "Food Poisoning Feb 2017

through Oct 1, 2017." Dkt. No. 24 at 32. But as explained above, the only specific instance of food poisoning pleaded by Zarate was his time-barred claim of March 8, 2015. Otherwise, Zarate pleads no facts or other plausible basis upon which the Court can find a non-time barred claim of food poisoning or claim of deliberate indifference to Zarate's medical needs related to such a claim.

Zarate was also asked through the questionnaire why he believes that Dr. Dunn wrongfully medicated him. Dkt. No. 24 at 11. His response is to implicate Dr. Dunn as an apparent co-conspirator with Saxton in Zarate's claim that Saxton sent him a poisoned letter in February-March 2015. Dkt. No. 25 at 32. Specifically, Zarate states:

> I believe that the Saxton letter and the medication had a side effect together . . . and Doc Dunn explained that if you use LSD if I had, I said "no," because the medication I'm going to give you will give you side effect if so. All of a sudden I get that letter [from] Saxton, I think something's up. I did think that then, but now I do. I got some pretty bad side effect from the medication.

*Id*. And when asked to provide dates when Dr. Dunn wrongfully medicated him, Zarate responds with January 4-11, 2015, which would make this claim also time barred. *Id*. at 33.

Ultimately, Zarate's allegations of wrongdoing on the part of Dr. Dunn—to the extent they are not time barred—are too vague and conclusory to be substantively plausible. *See Johnson*, 574 U.S. at 12. Moreover, as explained above, the Court considered the authenticated records from the BCSO in the screening of Zarate's claims. *See Norton* 122 F.3d at 292. Dkt. No. 15. The Court received 254 pages of authenticated records from the BCSO. Half of those pages relate in one form or another to Zarate either seeking medical or dental attention, receiving medical or dental attention, refusing medical or

dental attention, or trying to dictate the course of his medical or dental treatment. There is no support in the BCSO authenticated records—or in Zarate's conclusory factual allegations—for a claim that Dr. Dunn refused to treat Zarate, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for Zarate's serious medical needs. To the contrary, the authenticated records demonstrate that Zarate received medical attention each time he requested it. And although the treatments Zarate received may have differed than those he requested, this alone does not constitute a constitutional violation. *Norton,* 122 F.3d at 292 (holding that an inmate's disagreement with the treatment provided does not give rise to a constitutional claim). Here, the authenticated records rebut Zarate's claims of deliberate indifference on the part of Dr. Dunn. *See Banuelos*, 41 F.3d at 234 (holding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference).

For these reasons, the undersigned RECOMMENDS that Zarate's claims against Dr. Dunn be DISMISSED as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

### b. John Doe Dentist ("Dental Doc")

Zarate claims that a dentist "refused medical treatment for serious needs and refused *filling* to Plaintiff." Dkt. No. 22 at 8 (emphasis added). Zarate claims that he was refused the needed dental treatment unless he paid for it himself. *Id*. The Court sought to develop through the questionnaire Zarate's claims against the dentist. Dkt. No. 24 at 28. Through his questionnaire responses, Zarate alleges that the dentist "gave me medical service up to

a certain point, but I was in serious need of a *filling* and he would not provide." Dkt. No. 25 at 40. (emphasis added). When asked to describe how the dentist violated his constitutional rights, Zarate responds by stating that "my tooth and teeth just broken and he could have put *filling* in" and "I was having problem eating" and "pain all through the day, January 2015-Oct 1. 2017. *Id*. (emphasis added).

When asked to describe how he was harmed by the dentist's actions, Zarate claims that the dentist harmed him "by not putting *filling* in over the long period causing serious pain." *Id*. (emphasis added). Zarate goes on to claim that "[s]ome of the teeth was just broke because of the bone inside the hamburger meat or chicken." *Id*. Zarate claims that the dentist refused to provide him with necessary dental services for the dates "January 2015-Oct 1 2017." *Id*. Zarate appears to claim that he was required to have some teeth pulled because of the delay in having them *filled*. *Id.* (emphasis added).

Here again, any dental claims that accrued between June 24, 2017, and October 1, 2017, would not be time barred and are discussed below.

Dental needs can form the basis of a deliberate indifference claim. *See Carlucci v. Chapa*, 884 F.3d 534, 539 (5th Cir. 2018) (citing *Thompson v. Williams*, 56 F.3d 1385, 1385 (5th Cir. 1995); *Huffman v. Linthicum*, 265 F. App'x 162, 163 (5th Cir. 2008). But such a claim cannot be based on an inmate's preference for one dental treatment over another. *Leachman v. Harris Cnty., Tex.*, 779 Fed. Appx. 234, 238 (5th Cir. 2019) (citing *McQueen v. Karr*, 54 F. App'x 406 (5th Cir. 2002) (per curiam) (finding that inmate's preference for restorative treatment over extraction was frivolous and failed to state a claim); *see also Sanders v. United States*, 438 F.2d 918, 919 (5th Cir. 1971) (finding that

prison officials are not responsible for inmate's suffering caused by his refusal to undergo dental extractions).

As explained above, the Court also considered the authenticated records from the BCSO in the screening of Zarate's dental claims. *See Norton*, 122 F.3d at 292. Dkt. No. 15. Those records provide context to Zarate's thin factual allegations and, importantly, appear to confirm that Zarate's dental claim is based on his insistence that his teeth be filled instead of extracted. Specifically, the records reflect that in January 2017, Zarate refused to have a tooth pulled because he wanted it filled instead.

As explained above, the authenticated records confirm that Zarate regularly received medical and dental treatment. There is no support in the authenticated records—or in Zarate's factual allegations—for a claim that the dentist refused to treat Zarate, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for Zarate's serious dental needs. Each time Zarate complained of dental issues, he received a response. At best, Zarate's allegations support might support a claim of negligence. But while inadequate dental care "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). And an inmate's mere disagreement with the type of medical care he receives is insufficient to support an Eighth Amendment violation. *See Norton,* 122 F.3d at 292. A careful review of Zarate's factual allegations, read consistently with the authenticated records, reveals that Zarate was dissatisfied with the treatment offered him. This is insufficient to state a claim under Section 1983. *McQueen*, 54 F. App'x at *1.

For these reasons, the undersigned RECOMMENDS that Zarate's claims of deliberate indifference to serious medical needs against Dr. Dunn and John Doe Dentist be DISMISSED as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

3.  Claims against Sheriff and Brown County

a. *Individual capacity claims against Sheriff*

Zarate claims in his Amended Complaint that while he was incarcerated at the Brown County Jail from November 2014 to October 2017 the Sheriff:

> failed to act to control illegal actions of other defendants and the employees of Brown County Jail. He ignored complaints alleging sexual assault, physical assault & non physical assault by officers and inmates. He failed to act to protect Plaintiff. The [Sheriff] did not investigate multiple injury complaints or take steps to insure that Plaintiff received proper medical treatment and the condition of confinement with basic human needs and failure to protect the Plaintiff's witness from other officers & inmates abuses. And to replace money from theft.

Dkt. No. 22 at 7.

When asked through the questionnaire to expound upon the factual bases for his claims against the Sheriff, Zarate responds that the Sheriff failed to protect him by not investigating his complaints or ensuring that he received proper dental treatment. Dkt. No. 25 at 31. Zarate generally claims that he spoke with the Sheriff "about some or if not all things" he had been going through, but mainly claims that he spoke with Captain Caffey about his issues. *Id.* at 32. Zarate also claims that he had family members call the jail to alert them to the issues. *Id.*

As explained above, to the extent that Zarate brings claims against the Sheriff in connection with otherwise time-barred claims, his claims against the Sheriff on those bases would also be time-barred unless Zarate provides a basis for equitable tolling or deferred accrual of those claims, which he has not. This would include Zarate's allegations of various assaults, his general claim for failing to protect him from the time-barred harms, and his lost property claim. *See id.* at 29-32.[2]

Otherwise, to the extent Zarate claims that the Sheriff failed to protect him or showed deliberate indifference to serious medical needs in connection with his non time barred claims discussed above, those claims fail for the same reasons explained in connection with those claims. That is, Zarate has failed to plead enough facts to plausibly support claims of deliberate indifference regarding either food poisoning, medical care, or dental care.

Moreover, to the extent Zarate claims that the Sheriff failed to control or supervise his employees, government officials, including the Sheriff here, may not be held vicariously liable under Section 1983 for the acts of their subordinates. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "Officials acting in a supervisory role may only be held liable under § 1983 if they either (1) affirmatively participate in acts that cause a constitutional deprivation or (2) implement unconstitutional policies that causally result in the plaintiff's injury." *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)). And here Zarate's factual

---

[2] Zarate's questionnaire responses confirm that his claims against the Sheriff relate to alleged events that each occurred more than two years before Zarate's filing of this lawsuit). For these claims, there is no need for the Court to decipher whether Zarate brings these claims against the Sheriff in his individual capacity or his official capacity.

allegations against the Sheriff are vague and conclusory. He has not alleged sufficient facts to plausibly support either that the Sheriff affirmatively participated in violating his constitutional rights or implemented a policy that did so. *See* Dkt. No. 22 at 7; Dkt. No. 25 at 29-31.

For these reasons, the undersigned RECOMMENDS that the Court dismiss with prejudice Zarate's individual capacity claims against the Brown County Sheriff as frivolous and for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

### b. Official capacity claims against Sheriff and claims against Brown County

It is unclear whether Zarate is suing the Sheriff in his official capacity, or attempting to sue Brown County, or both. However, this Court must liberally construe his *pro se* claims to determine if such claims plausibly exist. *See Iqbal*, 556 U.S. at 679.

To hold a municipality liable under Section 1983 "requires proof of three elements: a policy-maker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc) (citations omitted). And an employee of a local government may be sued in his official capacity under Section 1983 if the plaintiff can show the employee was implementing a formal policy or a persistent, widespread practice that violated his rights. *Monell v. Dep't. of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

An "official policy" may take the form of a formal policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmakers or by an official to whom the lawmakers have delegated policymaking

authority. *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003). In addition, an official policy may also be in the form of "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that," in effect, "fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam). In such cases, the custom or practice has the "force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

But to establish a particular practice as a widespread or persistent enough as to amount to a policy for Section 1983 purposes, Zarate must show that there was "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582. Typically, a single "act is not itself a custom." *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). Isolated violations are not usually viewed as the "persistent, often repeated, constant violations, that constitute custom and policy" as required for municipal section 1983 liability. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984). Moreover, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (footnotes and citations omitted).

Finally, in limited circumstances, "[o]ne way of establishing liability is to show that a policymaker ratified the acts of a subordinate." *Young v. Bd. of Supervisors of Humphreys Cnty., Miss.*, 927 F.3d 898, 903 (5th Cir. 2019). However, this theory is limited to "extreme factual situations." *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d at 847. And "unless

26

the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

Zarate's factual allegations, even when accepted as true, fail to plausibly state an official capacity claim against the Sheriff or a claim for municipal liability against Brown County. Even if the Court assumes for purposes of preliminary screening that the Sheriff is a policymaker—which Zarate has not alleged—Zarate has failed to identify a policy or persistent, widespread practice on the part of the County that plausibly violated his rights. His allegations that the Sheriff ignored his complaints, failed to protect him, and showed deliberate indifference to his serious medical needs are each conclusory and without plausible factual support, as explained above. Nor has Zarate plausibly alleged that any such policy or practice, if it existed, was the moving force behind a violation of his rights.

For these reasons, the undersigned RECOMMENDS that Zarate's claims against the Brown County Sheriff in his official capacity and Brown County be DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

4.  Claims against Brown County Sheriff's Department and Brown County Jail

Finally, liberally construing Zarate's claims as ones against the Brown County Jail or the BCSO fares no better for Zarate. A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–

314 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id*. at 313.

Zarate fails to allege that the BCSO is a separate legal entity having jural authority. The Court finds no basis to independently conclude that the BCSO enjoys a separate legal existence and is subject to suit. *See*, *e.g.*, *Coates v. Brazoria Cnty*., 894 F. Supp. 2d 966, 969 (S.D. Tex. 2012) (federal district courts in Texas have found that a county sheriff's department is not a public entity with jural authority); *Williams v. Hunt Cnty*., No. 3:17-CV-3264-D-BN, 2018 WL 2031915, at *2 (N.D. Tex. Apr. 4, 2019) (finding Hunt County Sheriff's Department was not a jural entity); *Evans v. Dallas Cnty. Sheriff*, 4 F.3d 991 (5th Cir. 1993) (per curiam) (affirming district court's dismissal of plaintiff's claim against Dallas County Sheriff's Department because county sheriff's department does not have separate legal existence and cannot be sued).

The Brown County Jail is likewise a non-jural entity incapable of being sued. *Smith v. Tom Green Cnty. Jail*, No. 6:17-CV-0055-BL, 2018 WL 3873665, at *8 (N.D. Tex. Aug. 15, 2018) (finding that the Tom Green County Jail lacks a separate legal existence and dismissing claims against it as frivolous); *Edwards v. Dallas Cnty. Jail Med. Dep't*, No. 3:07-CV-0886-G, 2007 WL 2687615, at *2 (N.D. Tex. Sep. 13, 2007).

For these reasons, the undersigned RECOMMENDS that Zarate's claims against the BCSO and the Brown County Jail be DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

III.  <u>CONCLUSION</u>

As explained in these Findings, Conclusions, and Recommendations, the undersigned RECOMMENDS that:

1.  All Zarate's claims arising between March 2015 and June 24, 2017, as described on pages 4 and 5 above, be DISMISSED with prejudice as frivolous and for failure to state a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1);

2.  Zarate's deliberate indifference claims that relate to food poisoning and that accrued on or after June 24, 2017, be DISMISSED with prejudice as frivolous and for failure to state a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1);

3.  Zarate's claims of deliberate indifference to serious medical needs against Dr. Dunn and John Doe Dentist be DISMISSED with prejudice as frivolous and for failure to state a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1);

4. Zarate's claims against the Brown County Sheriff  in both is individual capacity and official capacity, his claims against Brown County, and his claims against the Brown County Sheriff's Office and Brown County Jail be DISMISSED with prejudice as frivolous and for failure to state a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

IV.  <u>RIGHT TO OBJECT</u>

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these Findings,

Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## V.  <u>TRANSFER OF CASE</u>

It is ORDERED that this case is transferred back to the docket of the United States District Senior Judge Sam R. Cummings and be designated as Civil Action No. 1:19-CV-00146-C.

ORDERED this 16th day of March, 2022.

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE